*578 OPINION.
Phillips:
There is no contention that respondent has erred in determining the amount of taxablé income. The principal question presented is whether the organization created by the deed of December 18, 19J23, is taxable as a trust or as an association. The Revenue Act of 1924 provides for the taxation of both entities and the line of demarkation between them is often very fine. Where, however, individuals have voluntarily associated themselves to'gether without a charter to engage in business upon methods and forms used by incorporated bodies and do so engage in business, the organization is an association, even though the form of a trust is adopted. E. A. Landreth Co., 11 B. T. A. 1; Hecht v. Malley, 265 U. S. 144. Here the parties voluntarily associated themselves together. E. A. Landreth Co., supra. No trust was imposed upon them. Cf. Blair v. Wilson Syndicate Trust, 39 Fed. (2d) 43. Transferable certificates similar to stock certificates were issued to the beneficiaries. Because of the terms of the trust instrument and the issuance of certificates their interest in the corpus and income of the property is substantially that of a stockholder in- a corporation, rather than that of a beneficiary of a trust. The general purpose of the trust as stated in the trust instrument (Art. I) was the acquisition, management, improvement and disposition of the trust property and of all such other property as might be acquired from time to time and the division of the income, proceeds and avails among the certificate holders. Then follow the specific provisions, among which are, to sell and convert the property into cash or other personal property (Art. II-l); to lease the property together with improvements thereon, “or to be erected thereon” (Art. II-3); to mortgage or pledge the property (Art. II-7); to partition or exchange or re-exchange; to convert and reconvert and in general to deal with such property or any parts thereof whenever and howsoever, and as often as desired (Art. II-8); to grant easements (Art. II-9); to enter into party wall agreements (Art. 11-10); to erect, repair, remodel and reconstruct buildings upon the trust property (Art. 11-12); to construct sidewalks and grade alleys and to lay and maintain sewer, water and gas pipes (Art. 11-13); to deal with the trust property in all other ways and for such other considerations *579 as it would be lawful for any person owning same to deal with it “ whether similar or different from the ways above specified ” (Art. 11-15); to begin and defend lawsuits and legal proceedings and compromise and arbitrate claims .(Art- 11-16); and, finally, it is provided that the enumeration of the specified powers and duties should not be construed as limiting the general powers conferred upon the trustees (Art. 11-19). By Article Y power was conferred upon them to use the funds of the trust, whether capital or income, or to borrow money for the repair, improvement and development of the trust property or for the acquisition of other property. By Article VII the trustees were authorized to distribute the proceeds of property sold or, at their discretion, to postpone such distribution, but not beyond the term of the trust, and by Article VIIl to distribute such part of the net proceeds arising from rents and income as was not required by other purposes of the trust.
The functions outlined in the deed of trust are not unlike those possessed by the Broadway Realty Company involved in Flint v. Stone Tracy Co., 220 U. S. 107, the Hecht Realty Estate Trust (Hecht v. Malley, supra), and by the Minneapolis Syndicate before it had parted with the control of its property under a 130-year lease. Zonne v. Minneapolis Syndicate, 220 U. S. 187. Viewed solely from the standpoint of the provisons of the deed of trust it seems clear that the certificate holders voluntarily associated themselves together under the form of a Massachusetts trust for the transaction of business and that the organization possesses the elements of an association. Hecht v. Malley, supra.
The contention that an association can not exist where the certificate holders have no control over the trustees was discussed at length in E. A. Landreth, supra. We there held that what was in fact an association was not changed into a taxable trust by the absence of such control. Hecht v. Malley, supra. See also the following decisions of the Circuit Court of Appeals: White v. Hornblower, 27 Fed. (2d) 777; United States v. Neal, 28 Fed. (2d) 1022; certiorari denied, 278 U. S. 659; and Little Four Oil & Gas Co. v. Lewellyn, 35 Fed. (2d) 149. The matter of control is one which is to be considered in determining whether the business is carried on in corporate form, but is not in itself determinative of the issue.
It is contended that the purpose was not to operate a business, but to wind up an estate, and reliance is placed upon the short life of the trust as first created. This might give us pause, in so far as the year 1924 is concerned, but for the activities of the trustees during that year. Their acts taken as a whole looked not to the closing out and liquidation of the property held by them but to continued activities. In that year only one sale of three pieces of property was *580 made and then only of property appraised at $22,500. On the other hand, the trustees in that year exchanged one piece of realty and $15,000 for another property and also erected an office building at a cost of approximately $55,000. To put it succinctly, they sold property appraised at $22,500 and acquired property at a cost of $70,000. In view of these transactions we can not close our eyes to the fact that before the expiration of 1925 the term of the trust was extended for an .additional 25 years. The necessity for an extension was apparent before the close of 1924.
We must also consider the very extensive powers given to the trustees and exercised by them. The trustees were not merely empowered to sell the real estate and preserve it pending such sale, but to carry on a general business, even to the extent of acquiring additional property. While all the sales of realty except one have been made at prices below the appraised value, and that one at the appraised value, the trustees have during the whole period of their existence carried on an elaborate business. They have constructed one office building and have operated it and another such building with the attendant costs and pay rolls; they have leased and released; made repairs and alterations; collected rents, and in fact conducted a general business. No sales were made in 1925. In the whole existence of the trust to date, about six and one-half years, total sales were made of realty of the appraised value of $122,000 out of property originally appraised to the trustees at $1,529,500, and during this period real property was acquired at a cost of $70,000. It thus appears that in these years the net excess of the value of the property sold over property acquired was only about $52,000. While it is true that the ultimate result of this elaborate scheme will probably be the sale of all the realty and the distribution of the proceeds, the deed authorizes the trustees to carry on, and in our opinion they have carried on, a business under forms and powers analogous to those enjoyed by corporations. The decision in Dauphin Deposit Trust Co., 21 B. T. A. 1214, is to be distinguished upon two grounds: (1) there was no attempt to carry on business under corporate forms, and (2) the primary purpose to liquidate the properties of the trust and distribute the proceeds was evidenced by action.
The very able brief prepared by counsel for the petitioners analyses several of the decisions of the Board and the courts. It can not be denied that certain inconsistent statements have found their way into the opinions, as counsel points out. This is regrettable but understandable when it is considered that the line of demarkation between organizations taxable as trusts and those taxable as associations has never been clearly drawn and perhaps is incapable of being clearly drawn because of different circumstances in each case. *581 Differences of opinion are bound to find their way into the opinions and contradictory statements result. As new cases are presented and decided by the Board and the courts, new light is shed upon the darkness and new opinions may be formed. The basic principles, however, have remained unchanged and the inconsistencies relate more to detail and language than to the substance of the decisions.
The petitioner claims that for 1924 it falls within the provisions of section 704 (a) of the Revenue Act of 1928. On this point we must also decide against its claim. Lansdowne Realty Trust, 20 B. T. A. 119; Dauphin Deposit Trust Co., supra.
Reviewed by the Board.

Decision will he entered for respondent.