MAGRUDER, COLLECTOR OF INTERNAL REVENUE, v. WASHINGTON, BALTIMORE & ANNAPOLIS REALTY CORP.

No. 601.   Argued March 9, 10, 1942.—Decided April 13, 1942.

*Mr. Robert L. Stern,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. J. Louis Monarch* and *Hubert L. Will* were on the brief, for petitioner.

*Messrs. Richard F. Cleveland* and *Ambler H. Moss* for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

This is a suit for refund of capital stock taxes paid by respondent for the years ending June 30, 1936, through 1939. We are asked to determine whether respondent was "carrying on or doing business" within the meaning of § 105 (a) of the Revenue Act of 1935, c. 829, 49 Stat. 1017, and subsequent acts, which provide:

"For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock." [1]

---

[1] This language has not been changed, except for the tax periods and the amount of the tax, in the subsequent acts covering the tax period

Respondent was organized in 1935 with broad corporate powers under the laws of Maryland by the protective committee for the bondholders of the defunct Washington, Baltimore & Annapolis Railway Company. It was formed for the purpose of liquidating certain properties, formerly belonging to the Railway Company, which the committee had acquired through foreclosure. Among the properties received by respondent from the committee were certain rights of way, easements, terminal properties, and other real estate located in Baltimore, Annapolis, and Washington, as well as at the other points along the line of the railroad, and the stock of a realty holding company which owned another realty company, both of which had been subsidiaries of the Railway Company for the purpose of holding legal title to real estate. The value of the properties received in 1935, as shown by respondent's balance sheet, was $419,250.

Since its incorporation respondent has been carrying on negotiations for the sale of the properties acquired, selling them from time to time as satisfactory offers were received, and renting unsold properties under short term leases in an attempt to earn the carrying charges pending ultimate sale. Receipts from sales during the four year period here in question were approximately $675,000, and rentals amounted to $136,000. At the end of this period respondent's book still showed properties worth $122,000. All net income, except small reserves for contingencies, was distributed as received to the stockholders, former bondholders of the Railway Company.

Respondent paid capital stock taxes for the four years in question, and then brought this suit for refund of the payments in the District Court. The court held that, because respondent was a liquidating corporation, it was

---

here in question. See § 401, Revenue Act of 1936, c. 690, 49 Stat. 1733; § 601, Revenue Act of 1938, c. 289, 52 Stat. 565. The provision is now incorporated in § 1200 (a) of the Internal Revenue Code.

not "carrying on or doing business" within the meaning of the capital stock tax and was therefore exempt. In so holding, the court refused to give effect to the Treasury regulation claimed to be applicable.[2] 35 F. Supp. 340. The Circuit Court of Appeals affirmed. 120 F. 2d 441. We granted certiorari because of the importance of the question in the administration of the revenue acts. 314 U. S. 601.

The regulation, Article 43 (a) (5), provides:

"ART. 43. *Illustrations.*—(a) *General.*—In general 'doing business' includes any activities of a corporation whether it engages in—

.        .        .        .        .

"(5) the orderly liquidation of property by negotiating sales from time to time as opportunity and judgment dictate and distributing the proceeds as liquidation is effected—for example, the liquidation of an estate, or of properties taken over from another corporation, or of the shareholders' fractional interests in particular property;"

If the regulation is both applicable and valid, respondent manifestly cannot prevail.

On the question of applicability there can be no doubt, for the language of the regulation precisely describes respondent's activities. We find without substance respondent's assertions that Article 43 (b) (2)[3] is inconsistent with Article 43 (a) (5) and that it more exactly fits the facts

---

[2] Article 43 (a) (5) of Treasury Regulations 64 (1936 Edition).

[3] "*Exceptions.*—Ordinarily the exceptions to 'doing business' are restricted to limited activities of a corporation, such as—

.        .        .        .        .

"(2) the distribution of the avails of property and the doing only of such acts as may be necessary for the maintenance of its corporate status in the case in which the corporation either was organized for, or has reduced its activities to, the mere owning and holding of specific property."

of this case. During the period in question, respondent did not fall into that state of quietude, covered by the specific language of Article 43 (b) (2), in which it was merely owning and holding specific property and distributing the resulting proceeds. See *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; cf. *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503, 516–17. On the contrary, respondent was actively engaged in fulfilling the purpose of its creation, the liquidation of its holdings for the best obtainable price.

Article 43 (a) (5) is both a contemporary and a long standing administrative interpretation, having been in effect in substantially the same form since 1918, except for the period from 1926 to 1933 when the tax was not imposed.[4] We are of opinion that it is valid, as well as applicable. The crucial words of the statute, "carrying on or doing business," are not so easy of application to varying facts that they leave no room for administrative interpretation or elucidation. To be sure, in many, if not in most, instances the factual situation will be so extreme as to leave no doubt whether a corporation is doing business or not. But the nuances of facts between the two ex-

---

[4] Article 5 of Treasury Regulations 38 (1918 ed.), issued under the Revenue Act of 1916, c. 463, 39 Stat. 756, provided:

" . . . A corporation formed to take over miscellaneous stocks, bonds, and other property, to negotiate the sale of the various items from time to time as opportunity and judgment dictate, and to distribute the proceeds from time to time as liquidation is effected, is organized for profit and while engaged in such liquidation is carrying on business."

This provision, with minor changes in wording, was continued in Treasury Regulations 50 (1919 ed.), Art. 18; (1920 ed.), Art. 11; Treasury Regulations 64 (1922 ed.), Art. 12; (1924 ed.), Art. 12; (1933 ed.), Art. 22; (1934 ed.), Art. 33. In 1936 Treasury Regulations 64 were reorganized and the substance of the provision quoted above was continued as Art. 43 (a) (5) of the 1936 edition. No change was made in the 1938 edition.

tremes have produced a nebulous field of confusion which has been recognized by courts striving to fit close cases into one category or the other.[5] Interpretative regulations, such as Article 43 (a) (5), are appropriate aids toward eliminating that confusion and uncertainty. Cf. *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90, 102; *Textile Mills Securities Corp.* v. *Commissioner*, 314 U. S. 326.

*Reversed.*

---

[5] See *Eaton* v. *Phoenix Securities Co.*, 22 F. 2d 497, 498; *United States* v. *Hotchkiss Redwood Co.*, 25 F. 2d 958; *Harmar Coal Co.* v. *Heiner*, 34 F. 2d 725, 727; *Argonaut Consolidated Mining Co.* v. *Anderson*, 52 F. 2d 55, 56; *American Investment Securities Co.* v. *United States*, 112 F. 2d 231, 232.

The decisions of this Court illustrate the difficult problems of classification encountered. See *Cedar Street Co.* v. *Park Realty Co.*, 220 U. S. 107, 170; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; *Edwards* v. *Chile Copper Co.*, 270 U. S. 452; *Phillips* v. *International Salt Co.*, 274 U. S. 718—with which compare *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; *McCoach* v. *Minehill Railway Co.*, 228 U. S. 295; *United States* v. *Emery, Bird, Thayer Co.*, 237 U. S. 28.